UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CALVIN THOMAS,** | : | Case No. 1:05-CV-02138 |
| | : | |
| **Plaintiff,** | : | |
| | : | JUDGE KATHLEEN  O'MALLEY |
| v. | : | |
| | : | |
| **THISTLEDOWN, Inc.,** *et al.*, | : | **ORDER** |
| | : | |
| | : | |
| **Defendants.** | : | |

Before the Court are Non-Party Avery Friedman and Sarah Moore's *Motions for Injunctive Relief* (Docs. 39, 41) ("Motions"), in which Friedman and Moore request an order to stay the proceedings in the case of *Calvin Thomas v. Avery Friedman, Esq., et al.,* Cuyahoga County Case No. CV-07-636137.  Moore requests that this Court direct an order not only to the Cuyahoga County Court of Common Pleas, but to Plaintiff and his counsel as well.  (*See* Doc. 41.)

The Court does not consider these Motions lightly.  On their face, they ask this Court to protect the effect of its prior judgment.  They also raise, however, the serious question of whether and when a federal court should limit the scope of a state court's proceedings, even when it is empowered to do so.

For reasons more fully explained below, after carefully weighing the relevant facts and circumstances presented by the instant dispute and the applicable law, this Court **GRANTS IN PART AND DENIES IN PART** the Motions for Injunctive Relief (Docs. 39, 41).

1

**BACKGROUND**

Plaintiff filed a complaint on September 8, 2005, alleging discrimination and retaliation against Defendants Thistledown, Inc. ("Thistledown"), William Murphy, and John Durastanti. (Doc. 2.) Plaintiff was represented in the initial action by both Avery Friedman and Sarah Moore. On March 24, 2006, after the parties had undergone some discovery, Defendants' jointly filed their Motion for Summary Judgment. (Doc. 21.) On April 13, 2006, before Plaintiff was required to respond to Defendants' Motion for Summary Judgment, the parties met for a settlement conference with the late, Honorable John M. Manos. As a result of the settlement conference, counsel for both parties signed a stipulated entry of settlement and dismissal with prejudice. Judge Manos signed the entry into an Order, dismissed the action with prejudice, and agreed to retain jurisdiction over the settlement agreement. (Doc. 22.)

On June 22, 2006, Plaintiff, through new counsel Caryn Groedel, filed a Motion for Relief from Judgment and Request for Hearing. (Doc. 25.)

On October 27, 2006, this Court held a hearing on Plaintiff's motion. During the hearing, Plaintiff's new counsel, Groedel, called three witnesses (Plaintiff, Plaintiff's brother, and Plaintiff's sister) and rested. Plaintiff's former counsel, Friedman and Moore, were present but were not called to the stand by Plaintiff. Although Plaintiff completed his case-in-chief, the Defendants did not have the opportunity to present their entire case because Groedel made certain inappropriate ethical allegations towards one of the Defendants' witnesses, Moore. (Doc. 38.) Specifically, Groedel argued that only contingency fee lawyers could be trusted to zealously represent their clients, because contingency fee lawyers had a financial stake in the outcome of the case. (*Id.*) In response, Moore requested the right to retain counsel to advise her regarding the appropriate response to those allegations. The Court informed Groedel that the ethical attacks she was making were inappropriate and irrelevant and asked her to

continue her examination with reference only to the facts – i.e., what factually occurred during the representation – without reference to Groedel's personal judgments as to those facts. When Groedel continued her ethical attacks and chose not to further develop the <u>factual</u> record, the Court put an end to the hearing to allow Moore to retain counsel.

On November 30, 2006, the Court issued an Order explaining that, although it had initially intended to reconvene to complete the hearing, it found it unnecessary to do so because the Plaintiff had failed to carry his burden under Rule 60(b). (*Id*.) The Court did not rely on Moore's testimony and, instead, based its conclusions on the representations of the actual participants in the settlement conference, especially Thomas himself.

In the Court's November 30, 2006 Order, the Court considered whether Thomas should be allowed to reopen the judgment in his case under Rule 60(b). After weighing Thomas' arguments, including his claim that he had not knowingly entered into a settlement agreement, the Court declined to reopen Thomas' civil action.

On October 2, 2007, Calvin Thomas filed an 11-count complaint against Friedman and Moore (*Thomas v. Friedman*, No. 07-626137). This complaint, pending before Cuyahoga County Court of Common Pleas Judge Peter J. Corrigan, alleges that Friedman and Moore's negligence "ultimately resulted in the dismissal, with prejudice ... [of] *Calvin Thomas v. Thistledown*, No. 05-CV-21378." (No. 07-626137 Doc. 1 ("Ex. A") at ¶ 10.) The complaint further claims that "Defendants accepted [a nuisance value settlement] without Plaintiff's express knowledge and understanding." (*Id*. at ¶ 11.) [It is clear that one aspect of Thomas' state court action, although by no means its only aspect, is the assertion that he did not knowingly enter into the settlement agreement in the instant action. (*See, e.g.*, Doc. 59.)[1]]

---

[1] Plaintiff has filed a motion to strike this filing (Doc. 59), containing correspondence between

On January 13, 2009, Friedman and Moore filed a motion in state court asking Judge Corrigan to apply the doctrine of collateral estoppel and give preclusive effect to this Court's conclusions in *Thistledown*. (*See* Doc. 39 Ex. C.) On January 20, 2009, after a brief hearing on the record, Judge Corrigan denied this motion.[2] Judge Corrigan ruled:

> I don't think collateral estoppel is applicable in this case. With respect to that hearing, there were different issues that were being adjudicated. There may be the same facts as part of this case, which I have ruled are admissible and that this jury should hear about those facts. What I've excluded is the judge's conclusion about those facts and her legal analysis whether or not a [60(b)] motion should be granted or not. During that hearing – and I read the transcript – which was not even finished – the hearing wasn't finished. The hearing was stopped in the middle of Mr. Avery's witness who was called, Miss Moore, that those conclusions the judge made were irrelevant to the issues that these jurors are going to determine.
> . . .
> It's not that I precluded it. It's – recall that, you know, it's a prior court proceeding. If there is impeachment evidence in that transcript, obviously that may be relevant at some point if the same witness testifies differently here in this case.
> . . .
> [T]he court's order, ruling, is that the legal conclusion of whether there's a settlement or not is being excluded. The facts surrounding any discussion regarding whether or not the case was concluded or a settlement of what was understood by those conversations is the issue in the case.

---

the Plaintiff and Chief Judge Carr, from the record because it was filed with the Court after the Court's initial deadline for receiving filings related to this motion. (*See* Doc. 60.) This Motion is **DENIED**. The Plaintiff's filing does not attempt to enumerate any manner in which consideration of this filing would harm the Plaintiff, nor could it. This filing (Doc. 59) is in response to certain unexpected representations Plaintiffs made during the hearing on February 3, 2009. At that hearing, Thomas strongly suggested that he did not intend to assert that he was asking the state court to revisit the question of whether he knowingly entered into the *Thistledown* settlement, in contrast to representations made to Judge Corrigan and Chief Judge Carr. (*See*, *e.g.*, Doc. 59.)

Although the Court always has the power to disregard filings it receives after Court-imposed deadlines and, frequently, a duty to exercise that power to prevent prejudice to parties who comply with this Court's orders, Movants could not have anticipated that the Plaintiffs would make representations during the hearing before this Court that are in tension with representations previously made to Chief Judge Carr.

[2] This Court does not intend to be critical of the process employed by Judge Corrigan. Cuyahoga County Judges must contend with almost breathtakingly large dockets, which they ably manage with only the aid of a relatively small staff. Were Judge Corrigan expected to produce lengthily written analysis in response to every motion *in limine*, his court would essentially come to a complete halt.

(No. 07-636137 1/20/09 Hrg.)  At that time, Moore's attorney proffered an objection for the record:

> If the opinion and order are not admitted into evidence and if the witness is not available for us to call, that that permits the plaintiff in this case to deny that a settlement occurred in Judge Manos's chambers in April of 2006 when at page 9 of the opinion and order Judge O'Malley writes, "Ultimately the court finds that the parties entered into a binding settlement agreement the terms of which are memorialized in the general release of claims and settlement agreement attached to a certain letter."  So the plaintiff here is going to be permitted in this malpractice trial to relitigate factual contentions that have already been litigated in Federal Court and have already been determined in the matter adverse to the plaintiff.

(*Id*. Objection of Attorney Petrov.)

Shortly after receiving Judge Corrigan's ruling, Friedman and Moore filed the instant Motions (Docs. 39, 41) seeking to enjoin Thomas from pursuing his state court claims in their entirety.

## **LEGAL STANDARD**

Federal Courts generally are barred from enjoining state proceedings by the Anti-Injunction Act.  *See* 28 U.S.C. § 2283.  Congress passed the Act to reinforce "the fundamental constitutional independence of the States and their courts."  *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

The Anti-Injunction Act does, however, contain an exception to allow federal courts to protect the effect of their judgments: a district court may issue an injunction to prevent state court proceedings from moving forward when those proceedings would religitate an issue that has already been decided by the district court.  *See Huguley v. General Motors Corp.*, 999 F.2d 142, 145 (6th Cir. 1993).  This "relitigation exception" allows a district court to issue an injunction "to protect or effectuate its judgments."  *Id*.  (citing 28 U.S.C. § 2283).

The Supreme Court has stated that "an essential pre-requisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court."  *Chick Kam Choo v. Exxon Corp.*, 486

U.S. 140, 147 (1988).  Consistent with this principle, a district court may only consider what its earlier "order actually said;" it may not "render a post hoc judgment as to what [its] order was intended to say." *Id.*; *but see St. Paul Mercury Ins. v Williamson*, 224 F.3d 425, 448 (5th Cir. 2000) ("In determining which issues have been actually litigated, the federal court is free to go beyond the judgment and may examine the pleadings and the evidence in the prior action.").

Under the relitigation exception, a federal district court may, but need not, issue an injunction to halt state court proceedings in cases when principles of *collateral estoppel* would prevent litigation of issues before the state court were those issues raised in federal court.  *See, e.g.*, *Ballenger v. Mobil Oil Corp.*, 138 Fed. Appx. 615, 619 (5th Cir. 2005) ("[T]he relitigation exception applies if a judgment of the federal court precludes the ... issues (*collateral estoppel*) raised in the state litigation."); *Huguley*, 999 F.2d at 145 (6th Cir. 1993) ("The relitigation exception is grounded in principles of ... *collateral estoppel*.") (citing *Chick Kam Choo*, 486 U.S. at 147).[3]  *Collateral estoppel* "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action."  *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).[4]

---

[3] Although it is generally true that, to obtain a permanent injunction, a movant must show "a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner," no such showing is necessary under the relitigation exception to the Anti-Injunction Act. *Liberty Mut. Ins. Co. v. Gunderson*, No. 04-2405, 2007 U.S. Dist. LEXIS 89479, at *12 (W.D. La. Nov. 30, 2007), *aff'd*, 2008 U.S. App. LEXIS 25502 (5th Cir. Nov. 25, 2008) (citing *Posada v. Lamb County*, 716 F.2d 1066, 1070 (5th Cir. 1983)).  Rather, "demonstrating that the matter satisfies the prerequisites of the relitigation exception is sufficient to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law." *Id.* (citing *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 667 (5th Cir. 2003)) (other citations omitted).  In accord with this principle, the Plaintiff challenges only the applicability of the relitigation exception and implicitly concedes that the Movants would suffer irreparable harm absent the issuance of injunctive relief.

[4] While the Court presumes that the federal law of *collateral estoppel* applies when a court analyzes the applicability of the relitigation exception, there is no need to conclusively resolve this question today.  It is well-established that the courts of Ohio apply collateral estoppel in a manner "consistent with the Supreme Court's view of the doctrine."  *McKinley*, 404 F.3d at 429.

To successfully invoke the religitation exception on the grounds of *collateral estoppel*, a party must show: (1) that an issue was raised and actually litigated in the prior proceeding; (2) determination of this issue was necessary to the outcome of that proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom *collateral estoppel* is being asserted had a full and fair opportunity to litigate the relevant issue. *Bies v. Bagley*, 535 F.3d 520, 524 (6th Cir. 2008). Both parties need not be the same for *collateral estoppel* to apply. *See, e.g.*, *Hancock v. Ohio*, No. 98-3297, 1999 U.S. App. LEXIS 29715, at *4 (6th Cir. Nov. 5, 1999) ("[Plaintiff's] claims are barred by the doctrine of *collateral estoppel*, even if there is not complete identity of the parties.").

**THE APPLICABILITY OF COLLATERAL ESTOPPEL**

In its November 30, 2006 Order, this Court conclusively determined that Thomas: (1) knowingly authorized a settlement with Thistledown for $7,500 and an agreement by Thistledown that it would not retaliate against Thomas; (2) personally informed Judge Manos that he would agree to settle his claims on those terms; (3) understood that Thistledown would not take employment taxes out of the $7500; (4) understood that the settlement was compensation for his allegations of hedonic damages; (5) understood that these promises by Thistledown were in return for an agreement by plaintiff to dismiss his then-pending claims and not refile them. Consistent with these findings and essential to the judgment, this Court also found that: (1) acting as Plaintiff's agent, counsel made a conscious decision to stipulate to the filing of a judgment entry reflecting that the case was to be designated as settled and dismissed with prejudice; (2) the response to Defendants' Motion for Summary Judgment was not yet due as of the date of the settlement conference; and (3) the settlement mooted the need to file any response to Defendants' prior motion for Summary Judgment.

Thomas is currently attempting to relitigate several of these factual conclusions before Judge Corrigan. Thomas's complaint in that action relies in part on the issue at the heart of the November 30,

2006 Order, which concluded that Thomas had knowingly entered into a settlement in the above captioned action. His state court complaint puts at issue "<u>whether there's a settlement or not</u>.... [and] [t]he facts surrounding any discussion regarding whether or not the case was concluded or [whether] a settlement [was reached or] what was understood by [Thomas] … is the issue in the case." (No. 07-636137 1/20/09 Hrg.) (emphasis added); *see also* No. 07-636137 Compl. at ¶ 11) ("Plaintiff sustained injury, loss, and damages in excess of $200,000 ... other than the nuisance value settlement which Defendants accepted <u>without Plaintiff's express knowledge</u> and understanding.") (emphasis added)). Thomas, however, has persuaded the state court that *collateral estoppel* does not prevent reconsideration of <u>any</u> of the issues considered by this Court during its November 30, 2006 hearing. (*Id*. ("I don't think *collateral estoppel* is applicable in this case," while the federal court may have considered the some of the same facts as this case, I have excluded its "conclusion about those facts.")).

This Court has great respect for principles of federalism. Its concern with extending proper comity to state courts generally is heightened here, moreover, because Judge Corrigan has already extended this Court substantial consideration (*see* Doc. 44). Nevertheless, Thomas is attempting to escape the consequences of his choice to litigate before this Court, and it is appropriate for this Court to protect the effect of its prior judgment.

Judge Corrigan's conclusion that the November 30, 2006 Order had no preclusive effect was understandable in light of the apparent confusion by all parties in that forum concerning the critical differences between *collateral estoppel* and *res judicata*. Thomas, for example, persisted in arguing that *collateral estoppel* should not apply because Friedman and Moore were not parties before this Court during the 60(b) proceedings. That consideration is simply not controlling for *collateral estoppel* purposes. Similarly, Friedman and Moore asked the state court to bar consideration of issues that <u>could</u> have been litigated during the 60(b) proceedings, a request that would only have been appropriate under

8

*res judicata*.  As explained below, however, this confusion by the parties lead Judge Corrigan to issue a ruling that was only partially correct.

*Collateral Estoppel Applies to Issues That Were "Actually Litigated"*

The doctrine of *collateral estoppel* only applies to issues that were "actually litigated."  The November 30, 2006 Order can only have a preclusive effect, if at all, as to issues that were actually considered and resolved by the Court.

As discussed above, the Court resolved eight separate issues against Thomas.  The parties framed these issues somewhat differently before Judge Corrigan and have briefed this Court in a manner consistent with that framing.  Nevertheless, although Thomas disputes their preclusive effect on other grounds, it is clear that Thomas concedes, as he must, that the Court actually addressed these eight issues in its November 30, 2006 Order.  (*See* Doc. 43 at 3-4.)

Movants, for their part, assert that this Court reached additional conclusions in its Order.  Most pointedly, they argue that this Court held that Friedman and Moore did not neglect Thomas and argue that the absence of any such neglect is the equivalent of the absence of malpractice.  Premised on this argument, Friedman and Moore then assert that <u>no</u> state civil action premised on assertions of malpractice could proceed without undermining the integrity of this Court's judgment.  Movants misunderstand what the court actually considered in the context of the Rule 60(b) motion before it.  This Court has never been asked to consider whether Thomas' original attorneys may have committed legal malpractice, or even were negligent in a common law sense.  What the Court considered was whether Friedman and Moore's conduct could be characterized as such a complete abandonment of their client that the Court should find any resulting settlement sufficiently unjust to justify an order setting it aside.  The Court did not express then, and certainly does not express now, any opinion as to whether Friedman and Moore may have been negligent under state malpractice law.  It is possible, for example, that a state

9

court may find that Friedman and Moore should have developed Thomas' case more fully before participating in the settlement conference.  This Court was not asked to consider such issues and, accordingly, did not reach them.

Movants further assert that all of the issues being litigated before Judge Corrigan <u>could</u> have been raised before this Court.  Moore and Friedman do not prevail on this point – as previously noted, *collateral estoppel* applies only to issues that actually were litigated, not to issues that could have been litigated.[5]

Thomas' response to the Movants' contention that this Court should bar consideration of issues that could have been litigated, however, requires its own discussion.  Groedel selectively quoted from this Court's prior hearing, in order to argue that the Court cannot preclude consideration of any of the issues raised by the malpractice suit because this Court actually instructed Groedel to file it.  The Court did no such thing: in context, the passage relied upon by Groedel revealed the Court's frustration with Groedel's groundless ethical attacks on Moore, not a comment designed to encourage state court litigation.  As noted, Groedel asserted that <u>only</u> contingency fee attorneys could be trusted to zealously advocate for their clients and, indeed, implied that this was true because <u>only</u> contingency fee attorneys had a financial stake in the outcome of the case.[6]  The Court informed Groedel that, if she wished to

---

[5] This Court is, for example, without power to bar the argument now made by Thomas, extensively discussed at the February 3, 2009 hearing, that Friedman and Moore should never have filed a civil rights lawsuit in federal court and should have instead filed in state court.  While this court is stunned by the argument that Federal Courts are inadequate guardians of the civil rights of the citizens within its jurisdiction (indeed, Thomas' counsel has prevailed in civil rights matters before this Court), or the argument that the mere choice to file a civil rights action in Federal Court could be deemed malpractice (or even indicative of malpractice) under state law, whether such an argument is admissible under State law should be addressed by the State Courts.

[6] The Court again notes its amazement with this argument, which would engender the utmost disrespect for all lawyers if true.  Indeed, if one accepts Groedel's contentions, all contingency fee lawyers would be subject to sanction, because lawyers must guard against decisions made because of a "personal" financial interest in a client's litigation.  The Court presumes that Thomas is making an

argue that the representation of a plaintiff on an hourly rate basis was per se unethical she needed to raise that issue in a "different context." The Court was clearly referring to grievance procedures, not a state court malpractice action. Indeed, Groedel pursued two unsuccessful grievances shortly after the proceedings before this Court, supporting the conclusion that she understood at the time what this Court meant.

One additional issue bears special mention. Before the state court, Thomas is currently arguing that he only entered into the settlement agreement with Thistledown under duress. Whether this issue was "actually litigated" is something of a close call. This Court explicitly concluded that Thomas gave his attorneys authority to settle his case and used language in its opinion (e.g., "buyers remorse") that clearly indicates that it did not consider Thomas to be acting under duress. His counsel before Judge Corrigan is the same as counsel in the fall of 2006 and that counsel had ample time to prepare him for the Rule 60(b) hearing. It is certainly peculiar for Thomas not to have explicitly raised the issue of duress when bringing his 60(b) motion, as duress is a very persuasive ground over which a court may choose to reopen a judgment. The Court concludes, however, that the issue of duress was not squarely considered in 2006 and that the question of what was "actually litigated," must be construed extremely narrowly for purposes of *collateral estoppel*. For that reason, the Court does not believe it has the power to bar consideration of this issue.[7]

---

entirely different argument before Judge Corrigan, namely that a contingency fee may sometimes be more appropriate than a fixed hourly rate, depending on the plaintiff's financial status and the strength of that plaintiff's claims. Thomas' counsel represented exactly this during the February 2, 2009 hearing on the instant motion.

[7] It does seem that this is something of a pyrrhic victory for Thomas. Friedman and Moore can surely argue in state court that Thomas' failure to raise duress in 2006 indicates that Thomas was never actually under duress.

11

*An issue must have been "necessary to the outcome" of the 2006 proceeding*

Even when the Court has considered an issue, *collateral estoppel* does not apply if a given issue was not "necessary to the outcome" of the original proceeding. Neither party contests this issue and it seems clear that each of the eight issues "actually litigated" before this Court were also necessary to its ultimate holding.

*Final Judgment on the Merits*

Thomas asserts that a Rule 60(b) motion should not be given preclusive effect under the doctrine of *collateral estoppel* because it is not a final judgment. Thomas is simply incorrect – it is well-settled that "[t]he denial of a Rule 60(b) motion is a final judgment." *Kersh v. Am. Heart of Mich., Inc.*, 76 Fed. Appx. 648, 649 (6th Cir. 2003) (citing *Good v. Ohio Edison Co.*, 149 F.3d 413, 417 (6th Cir. 1998)) (additional citations omitted).

Thomas' persistent argument here that the district court's disposition of a Rule 60(b) motion is not precisely the same as a legal malpractice action is largely irrelevant. A legal malpractice claim is indeed different from a Rule 60(b) motion, but factual issues, such as whether an attorney failed to respond to a summary judgment motion, can be common to both. Thomas' motion pursuant to Rule 60(b) directly put in issue many of the factual allegations now underpinning the state malpractice claim. Thomas' argument that a Rule 60(b) motion and an action in state court for legal malpractice are not identical vehicles generally raises "a distinction without a difference for purposes of collateral estoppel." *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 850 (6th Cir. 2006).[8]

---

[8] That difference is only meaningful at the margins – i.e., with respect to the scope of the factual conclusions that were made. For instance, the finding that Moore and Friedman did not "abandon" Thomas under the relevant Rule 60(b) standard is not determinative of the question of whether they may have been "negligent" in their handling of Thomas' case.

12

*Full and Fair Litigation*

Thomas devotes a considerable portion of his briefing to arguing that the proceedings before this Court did not afford him a full and fair opportunity for litigation.  Thomas' arguments here are disingenuous.  He notes that this Court's November 30, 2006 findings were based on "the record" of those proceedings, and that that record is different from the record being developed in the state court legal malpractice action. But Thomas chose this Court as his forum, Rule 60(b) as his vehicle, and decided what evidence to present.  Thomas called witnesses to testify at the hearing.  Of particular relevance, Friedman and Moore were both present in the courtroom and could have been called to testify, but Thomas chose not to call them.  Fundamentally, Thomas himself deliberately created the very record he now seeks to attack.  That he believes he could have presented a stronger case then, or that he believes he has evidence supporting a stronger case now, is of no moment.  For Thomas to note repeatedly that the trial record before Judge Corrigan is more developed than the record that was presented to this Court is exactly wrong: *collateral estoppel* exists in part to discourage this very behavior – parties may not relitigate unfavorable legal findings merely because they believe they can present a stronger case the second time around.[9]

Thomas also argues that he was not afforded a full opportunity to cross-examine witnesses.  This is highly misleading.  This Court did not rely on any of the Defendants' case-in-chief.  Instead, it held that Thomas, having been afforded the opportunity to present his case, failed to carry his burden. (*See* Doc. 38).[10]  Indeed, the Court relied heavily on Thomas' own testimony, including his failure to deny

---

[9] Furthermore, the Court notes that almost none of the additional evidence raised by Thomas concerns the issues actually litigated before this Court – rather, it concerns issues that could have been raised but were not.  As previously explained, Thomas generally is not prevented from raising such arguments against Moore and Friedman in state court.

[10] Although not necessary to this decision, it is also true that a party can have a "full and fair" hearing without a complete cross-examination.  *See Chauffeur's Training Sch., Inc. v. Spellings*, 478

13

that he told Judge Manos he would accept a settlement of $7500 and his admission that no other dollar figure was raised during those discussions with Judge Manos.  Even if the Court had considered Defendants' case-in-chief, Thomas still could not prevail, because he at no prior point challenged the fairness of this Court's hearing.  *See Bies v. Bagley*, 519 F.3d 324, 339 (6th Cir. 2008) ("[Respondent] did not claim at any point during those proceedings that they were somehow unfair, or otherwise denied them a full and fair chance to present their arguments.").  Thomas did not ask this Court to reopen the record before it by pointing to anything meaningful he would have proffered, and did not appeal this Court's judgment on that, or any ground.

## WHETHER AN INJUNCTION SHOULD ISSUE

Although this Court has concluded that the doctrine of *collateral estoppel* would ordinarily operate to bar Thomas from raising many of the issues he is currently attempting to raise in state court, this Court still must consider whether to issue an injunction in this case under the relitigation exception. The Court concludes that the relitigation exception was intended in part to allow a district court to protect its judgments on precisely the instant facts: litigants should not be permitted a second bite at the apple in state court merely because they have managed to persuade a state court with highly misleading briefing.  It is, in fact, this Court's hope that appropriate use of the relitigation exception to the Anti-Injunction Act will discourage litigants from such behavior in the first instance.

Indeed, the exception applies with particular force in the instant case, as the Court concludes that more factually and legally accurate briefing before Judge Corrigan may well have forestalled the need for such extraordinary relief in this forum.  The Court concludes that the injunction sought herein

---

F.3d 117, 132 (2d Cir. 2007) ("A requirement of collateral estoppel is that there must have been full and fair opportunity for the litigation of the issues in the prior proceeding ... [i]n these circumstances the unavailability of cross-examination was not significant."); *Duane v. United States DOD*, 275 F.3d 988, 996 (10th Cir. 2002) ("[A]dditional witnesses ... would not have changed [the] facts [necessary to judgment], nor would ... additional cross-examination.").

properly falls within the exception for injunctions "necessary to protect or effectuate [the district court's] judgments," 28 U.S.C. § 2283; *See also Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002). The relitigation exception exists to give effect to orders regarding claims or issues that have been decided by the federal court and to protect them from being ignored, undermined, or relitigated in state proceedings, *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988).

## **CONCLUSION**

For the aforementioned reasons, this Court **GRANTS IN PART AND DENIES IN PART** the Motions for Injunctive Relief (Docs. 39, 41), **GRANTS** Friedman's Motion to Supplement the Record (Doc. 59), **DENIES** Thomas' Motion to Strike (Doc. 60), and **GRANTS** Thomas' Motion to Supplement the Record (Doc. 61).

Accordingly, Thomas and his counsel are **PERMANENTLY ENJOINED** from claiming before Judge Corrigan or before any other judicial tribunal that Thomas did not: (1) knowingly authorize a settlement with Thistledown for $7,500 and an agreement by Thistledown that it would not retaliate against Thomas; (2) personally inform Judge Manos that he would agree to settle his claims on those terms; (3) understand that Thistledown would not take employment taxes out of the $7500; (4) understand that the settlement was compensation for his allegations of hedonic damages; (5) understand that these promises by Thistledown were in return for an agreement by plaintiff to dismiss his then-pending claims with prejudice. The same parties are also **PERMANETLY ENJOINED** from asserting any claim contrary to the following three previous findings of this Court: (1) acting as plaintiffs agent, counsel made a conscious decision to stipulate to the filing of a judgment entry reflecting that the case was to be designated as settled and dismissed with prejudice; (2) the response to Defendant's Motion for

Summary Judgment was not due as of the date of the settlement conference; (3) the settlement mooted the need to file any response to Defendants' motion.[11]

      **IT IS SO ORDERED.**

s/Kathleen M. O'Malley<br>
**KATHLEEN McDONALD O'MALLEY**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated: February 20, 2009**

---

[11] As a consequence of the extraordinary nature of this relief, an injunction shall also issue preventing Cuyahoga County Judge Corrigan from considering any of these eight issues.  The Court does so only as a matter of procedural necessity.  It is obvious that Judge Corrigan, who has extended substantial comity to this Court during these unusual proceedings, would not permit these issues to be raised in his courtroom in light of this ruling.